UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ESTATE OF ANGELICA OLIVAREZ,
by and through her personal representative
THERSA MEDEL,

        Plaintiff,                           Case No. 16-cv-10192

v                                           Honorable Thomas L. Ludington

CITY OF LANSING, et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, DISMISSING COUNTS 1 AND 2 OF PLAINTIFF'S COMPLAINT WITH PREJUDICE, AND DISMISSING COUNTS 3 AND 4 OF PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE**

This action was initiated by the Estate of Decedent Angelica Olivarez by her personal representative, Theresa Medal, against Defendants City of Lansing and Does 1-15 on January 20, 2016. *See* Compl., ECF No.1. Plaintiff alleges that by releasing a wanted person named Michael Lawrence without verifying his identity, Defendants created a danger that ultimately led to the death of Decedent Olivarez. *Id*. As a result, Plaintiff alleges a 42 U.S.C. § 1983 claim against the individual Defendants, alleging that they are liable for a state-created danger in violation of the Fourteenth Amendment. *Id.* She also alleges a § 1983 claim against the City of Lansing pursuant to *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978), claiming that Olivarez's death was caused by the City's execution of its booking and identification policies. Plaintiff also alleges two state common law claims of wrongful death and gross negligence.

On April 21, 2016 Defendant City of Lansing moved to dismiss Plaintiff's constitutional claims under Federal Rule of Civil Procedure 12(b)(6).  *See* Mot. Dismiss, ECF No. 9.  For the reasons stated below, Defendant's motion to dismiss will be granted.  Plaintiff's constitutional claims will be dismissed with prejudice, and her state law claims will be dismissed without prejudice.

**I.**

According to Plaintiff's complaint, at the time of the events in question Michael Lawrence was wanted for the murder of a six-year old named Lay'la Jones in Saginaw, Michigan. *See* Compl. ¶ 8. While in the City of Lansing on or about February 24, 2013, Michael Lawrence was allegedly detained by Lansing Police Officers John Doe 1 and 2 in connection with the arrest of a female companion.  *Id*. at ¶ 9. When asked for identification by Officer Doe 1, Mr. Lawrence provided a false name. *Id*. at ¶ 10.  Upon searching the Law Enforcement Information Network ("LIEN") Officer Doe 1 discovered that the false name had outstanding warrants associated with it. *Id*.

When Officer Doe 1 attempted to place Mr. Lawrence under arrest for the outstanding warrants, Mr. Lawrence informed Officer Doe 1 that the name he had provided was false. *Id*. at ¶ 11.  He then proceeded to provide Officer Doe 1 with a second false name, Dominique Saxton. *Id*.  Officer Doe 1 then used LIEN to search the name Dominique Saxton, and confirmed that the date of birth and physical descriptions of Dominique Saxton fit Mr. Lawrence. *Id*. at 12.  Mr. Lawrence was then placed under arrest under the name "Dominique Saxton" for providing false information to a police officer. *Id*. at ¶ 13.  He was transported to the Lansing Police Department's detention center for around an hour, and then released on bond. *Id*. Mr. Lawrence was never fingerprinted during his time in custody. *Id*. at ¶ 14.

Less than two months after he was released by the Lansing Police Department, on or about April 15, 2016, Mr. Lawrence allegedly killed Angelica Olivarez, his long-time girlfriend and mother of his son. *Id.* at ¶ 17; *See also* Pl.'s Resp. 6, ECF No. 11. Plaintiff alleges that Olivarez's death was the result of Defendants' "grossly negligent acts, failure to follow the proper procedures and in complete disregard of local, state, and federal law and constitutional protections that should have been afforded to Plaintiff Angelica Olivarez…." Compl. ¶ 18.

**II.**

Defendant City of Lansing now moves to dismiss Plaintiff's § 1983 claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See* Mot. Dismiss. A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

**A.**

Defendant first moves to dismiss Plaintiff's state-created danger claim brought pursuant to § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* To establish a claim under § 1983 a "plaintiff must establish both that 1) []he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

Plaintiff's state-created danger claim arises out of the Due Process Clause of the Fourteenth Amendment. As explained by the Supreme Court in *DeShaney v. Winnebago County Department of Social. Services*, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." 489 U.S. 189, 195 (1989) (holding that the Winnebago County Department of Social Services could not be held liable for the injuries inflicted on a young child by his father, even though it was the Department's general responsibility to prevent child abuse and the Department had, in fact, returned the child to his father's house after having taken temporary custody of him). Instead, the purpose of the Clause was to protect the people from the State, and "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id*. As such, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id*. at 197.

Courts have recognized two narrow exceptions to this general rule. First, a governmental actor may violate the due process clause "by allowing a third party to harm a person in government custody[.]" *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (quotations and citation omitted). Second, and more applicably, a governmental actor

may violate the due process clause "creating a particular danger to the victim." *Id*. For application of the latter exception – known as the state-created danger doctrine – a plaintiff must establish the following:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Jones v. Reynolds,* 438 F.3d 685, 690 (6th Cir. 2006).

Defendant argues that, because Plaintiff's claim is based upon an allegation that its officers failed to fingerprint or otherwise properly identify Mr. Lawrence, Plaintiff has not alleged any affirmative act, much less an affirmative act that *created* or *increased* Olivarez's risk of private harm. A "failure to act is not an affirmative act under the state-created danger theory," *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). *See also Jones,* 438 F.3d at 691 (holding that there was no evidence of a cognizable affirmative act by police officers that failed to stop a drag race that ultimately caused the death of the plaintiff); *Sargi v. Kent City Bd. Of Educ.,* 70 F.3d 907 912-13 (6th Cir. 1995) (failing to provide bus drivers with a plan for managing emergencies, taking seizure victim home without medical intervention, failing to maintain communication devices on a bus, and failing to tell the bus driver of the student's medical condition were not affirmative acts); *Reed v. Knox County Dep't of Human Servs.,* 968 F.Supp. 1212, 1220–22 (S.D.Ohio 1997) (failing to inform family of foster child's violent history, placing child in home, and failing to remove child were not affirmative acts).

In an effort to save her claim, Plaintiff attempts to recast the alleged actions of Defendants. Instead of a failure to fingerprint or properly identify Mr. Lawrence, Plaintiff alleges that Defendants committed the following affirmative acts "(1): the unreasonable and

unwarranted assumption that Lawrence was 'Saxton' after the officers were already given one false identity, and (2) releasing Lawrence back into the community without ascertaining his true identity." *See* Pl.'s Resp. 9. Plaintiff's arguments in this regard are without merit. Plaintiff's first theory regarding the assumption of Mr. Lawrence's identity is not a cognizable affirmative act, but a mental impression. Moreover, the argument that the assumption was "unreasonable and unwarranted" is belied by Plaintiff's own concession that Officer Doe 1 ran the identity through the LIEN database. Plaintiff's second theory regarding Mr. Lawrence's release is also not an affirmative act because it is dependent on a failure to act – the release *without* ascertaining his true identity.

Even if Plaintiff had alleged an affirmative act, the allegations set forth by Plaintiff do not establish that Defendants created or increased Olivarez's risk of harm. In determining whether the state created or increased the risk of private harm "[t]he question is not whether the victim was safer during the state action, but whether [she] was safer before the state action than [she] was after it." *Cartwright,* 336 F.3d at 493 (holding that the plaintiff had failed to state a claim of state-created danger where the defendants removed the plaintiff from the shoulder of a two-lane highway and deposited him in the parking lot of a convenience store). *See also DeShaney,* 489 U.S. at 201 (holding that the state's temporary custody of the child did not alter the analysis, "for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all."). In other words, state actors are not liable where they "merely return[] a person to a situation with preexisting danger." *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003).

Because Plaintiff's claims do not establish that Olivarez was safer before Mr. Lawrence's encounter with the Lansing police then she was after his release from temporary custody, she has

failed to state a claim of state-created danger. There is therefore no need to reach the parties' alternative arguments on this claim.

**B.**

Defendant City of Lansing also moves to dismiss Plaintiff's *Monell* claim. In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under 42 U.S.C.A. § 1983. *Monell*, 436 U.S. at 700-01. Such a claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. However, because Plaintiff has not shown that any individual officer violated her constitutional rights, her claim against Defendant City of Lansing fails as a matter of law. *See Cartwright,* 336 F.3d at 495 ("Because the City can only be held liable if there is a showing of liability on the part of its officials, the determination that the officers did not violate Cartwright's constitutional rights resolves plaintiff's claim against the City as well.").[1]

**III.**

Because Plaintiff's federal claims will be dismissed, Plaintiff's related State law claims will be dismissed without prejudice. A federal court may exercise supplemental jurisdiction over a plaintiff's state law claims if they form part of the same controversy as the federal claim. *See* 28 U.S.C. § 1367(a). A federal court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the "values of judicial economy,

---

[1] To the extent Plaintiff seeks permission to file an amended complaint in her response to Defendant's motion to dismiss, her arguments will be disregarded. Under this Court's practice guidelines motions and affirmative requests for relief may not be included within responses or replies.

convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp*., 89 F.3d 1244, 1254–1255 (6th Cir.1996)). Plaintiff's state law claims will be dismissed without prejudice.

### IV.

Accordingly, it is **ORDERED** that Defendant City of Lansing's Motion to Dismiss, ECF No. 9, is **GRANTED.**

It is further **ORDERED** that Counts 1 and 2 of Plaintiff's complaint, ECF No. 1, are **DISMISSED with prejudice**.

It is further **ORDERED** that Counts 3 and 4 of Plaintiff's Complaint, ECF No. 1, are **DISMISSED without prejudice**.

        s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge

Dated: August 22, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 22, 2016.

        s/Michael A. Sian
        MICHAEL A. SIAN, Case Manager